UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES COLLITON and CLAUDIA COLLITON,

Plaintiffs,

-against-

HANNAFORD,

Defendant.

25-CV-5728 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

James and Claudia Colliton, a married couple proceeding pro se, allege that their local Hannaford grocery store unlawfully discriminated against them on the basis of race. Their complaint alleges that grocery store staff pointedly surveilled and made discriminatory verbal remarks to them. Then, after returning more than one hundred store goods without proof of purchase, the Collitons were subjected to a targeted store requirement that they show proof of purchase with any future returns. Because the Complaint does not allege any facts to suggest that this treatment was motivated by racially discriminatory intent, the Court grants Defendant's motion to dismiss in full and dismisses Plaintiffs' claims.

## BACKGROUND

The following facts are taken from the Complaint and presumed to be true for the purposes of this Opinion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiffs, a married couple, are frequent shoppers at their local Hannaford grocery store in Dutchess County, New York. ECF No. 1 ("Compl.") at 5–6. They allege that their experience as a mixed-race couple shows "wanton, reckless[,] and intentional" racial discrimination at Hannaford. *Id.* at 5, 16. Mr. Colliton, a white man, has shopped at Hannaford for more than

twenty-five years, and as of 2024, he had "returned over 100 items" without issue—despite often lacking a receipt. *Id.* at 5, 7. When Ms. Colliton began shopping at Hannaford, however, she—a Black woman—encountered "an issue" any time she tried to make a return. *Id.* at 5, 8. Both plaintiffs frequently utilize the "self-checkout" option, which often runs out of paper and fails to print a receipt. *Id.* at 6.

At the beginning of July 2025, the store manager Rod Duncan told Ms. Colliton that she would not be permitted to make any more store returns without a receipt. *Id.* at 9. On July 5, 2025, this guidance was formalized when the local Hannaford director of operations instructed Ms. Colliton in writing that her refunds would only be processed "with an accompanying receipt effective immediately." *Id.* at 10. Mr. Colliton had received a similar note from a Hannaford regional manager a couple of days prior, on July 3, 2025, stating that Hannaford would "no longer process any refund requests from [him] or anyone acting on [his] behalf without receipt of purchase." *Id.* at 11.

This treatment perplexed Plaintiffs, because Ms. Colliton had only made "a small number of returns without receipts" and Hannaford's return policy does not limit the number of items that may be returned. *Id.* at 9, 15. Moreover, Hannaford customers "are not required to present identification or sign anything to execute a return," so Plaintiffs contend that the store does not know "how many returns any particular customer has made." *Id.* at 8. Hannaford's return policy "has always been" that "manager approval may be required" for returns without proof of purchase. *Id.* at 7.

Plaintiffs also felt surveilled whenever they shopped at Hannaford. *Id.* at 13. Ever since they started shopping together, Plaintiffs were "usually follow[ed]" or "watch[ed] . . . from a second floor." *Id.* In one 2024 incident, Mr. Colliton asked a Hannaford employee to stop

following him and his family, and the employee proceeded to call him "an idiot." *Id.* After reporting the comment to a store manager, Mr. Colliton was told "nothing would be done" and questioned why "you people" needed to shop at Hannaford. *Id.* at 14.

Plaintiffs filed this case on July 10, 2025, and were granted permission to proceed *in forma pauperis* on July 24, 2025. Compl.; ECF No. 4. Defendant filed its motion to dismiss on December 23, 2025, and the motion was fully briefed as of January 20, 2026. ECF Nos. 14, 19.

**LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). This is especially so in pro se cases, where courts read filings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

Pro se complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (internal citation omitted). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (internal citation omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Because Plaintiffs are proceeding pro se, the Court must liberally construe the Complaint and interpret it "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted).[1]

**DISCUSSION**

Plaintiffs do not specify a cause of action in the Complaint and say only that the conduct described "infringe[s] on [their] rights under the Constitution and unlawfully discriminate[s]" against them. Compl. at 15. The Court here interprets Plaintiffs' statement broadly to include claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985, Title II of the Civil Rights Act of 1964, and state constitutional analogues—proceeding on a theory of racial discrimination against Ms.

[1] Assuming without deciding, the Court affords Plaintiffs the full special solicitude available to pro se litigants—even though Mr. Colliton was formerly a barred attorney. *See Colliton v. Cravath, Swaine & Moore LLP*, No. 8-CV-400 (NRB), 2008 WL 4386764, at *1–2, *15 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (describing Mr. Colliton as a "disbarred attorney" and explaining the circumstances that led to his disbarment). The Complaint and Opposition appear to be drafted in part or in full by Ms. Colliton, and, to the Court's knowledge, Ms. Colliton does not have any legal experience. *See* ECF No. 18 ("Opp.") at 1, 7; Compl. at 19; *but see also Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented."); *United States v. Pierce*, 649 F. App'x 117, 117 n.1 (2d Cir. 2016) (summary order) (explaining that the principle that "a lawyer representing himself ordinarily receives no such solicitude at all" extends to disbarred attorneys) (citation omitted).

Colliton and associational discrimination against Mr. Colliton. The analysis proceeds as follows. Preliminarily, both parties' procedural disputes regarding the Motion to Dismiss are rejected. Then, the Court finds that Plaintiffs' failure to specifically enumerate their legal claims does not violate the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure because of their pro se status. Last, the Court reviews the merits of Plaintiffs' claims and finds that Plaintiffs fail to state a claim on the constitutional and statutory bases that may be read into the Complaint.

## I. The Parties' Procedural Arguments Are Rejected

At the outset, the Court rejects Plaintiffs' claim that the Motion to Dismiss is duplicative because the Complaint was not dismissed by the Court before service was effectuated. *See* Opp. at 1. A complaint filed *in forma pauperis* ("IFP") may be dismissed "at any time" upon determination that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Plaintiffs argue that this statutory analysis—required for litigants proceeding IFP—"already concluded that a claim was stated" and thus the Motion to Dismiss seeks a ruling on an issue that has already been decided. Opp. at 1.

It is true that, as required by Section 1915, this Court will sometimes dismiss claims for failure to state a claim on which relief may be granted without briefing from the parties and before ordering service. *See, e.g.*, *Haljuci v. McCormack*, No. 26-CV-1424 (JGLC), 2026 WL 776027, at *1 (S.D.N.Y. Mar. 19, 2026); *Taylor v. Henson*, No. 25-CV-4867 (JGLC), 2026 WL 915455, at *5 (S.D.N.Y. Apr. 3, 2026). However, the Second Circuit has instructed that "[u]nless it is unmistakably clear . . . that the complaint lacks merit or is otherwise defective, . . . it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) (cleaned up). "Providing a

plaintiff with notice and an opportunity to be heard is often necessary to establish the fairness and reliability of a dismissal," and "failure to afford an opportunity to oppose" can, "by itself, [be] grounds for reversal." *Id.* at 639–40 (cleaned up). Accordingly, the Court often declines to dismiss claims until after the parties have had an opportunity to brief the grounds for dismissal. Moreover, nothing in the text of Section 1915 indicates that its standard replaces a defendant's ability, under the Federal Rules of Civil Procedure, to raise its own arguments as to why a complaint fails to state a claim for relief.

Next, the Court rejects Defendant's contention that it should deem Mr. Colliton's claims abandoned because his signature is omitted from the Opposition. ECF No. 19 ("Reply") at 1. Defendant argues that, because only Ms. Colliton signed the opposition briefing, Mr. Colliton has in essence failed to oppose Defendant's motion entirely. *Id.* This argument is without merit. First, in light of Plaintiffs' pro se status, the Court declines to impose such a rigid sanction. Further, even if Mr. Colliton had in fact failed to oppose Defendant's motion, that would not end the analysis. A plaintiff's "failure to oppose [a motion to dismiss] does not itself justify the dismissal of the complaint." *Ortiz v. Pace Univ.*, 761 F. Supp. 3d 695, 699 (S.D.N.Y. 2025) (citing *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000)). "The sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Accurate Grading Quality Assurance, Inc. v. Thorpe*, No. 12-CV-1343 (ALC), 2013 WL 1234836, at *5 (S.D.N.Y. Mar. 26, 2013) (quoting *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000)). Therefore, this Court routinely assesses the merits of unopposed motions to dismiss. *See, e.g.*, *Safranek v. Wegmans Food Mkts., Inc.*, No. 25-CV-5696 (JGLC), 2026 WL 554774, at *2 (S.D.N.Y. Feb. 27, 2026). Here, the Court has the benefit

of Ms. Colliton's pro se opposition and finds it appropriate to consider the merits of the Complaint as to both Plaintiffs.

## II. Plaintiffs Do Not Run Afoul of Rule 8

Defendant contends that "Plaintiffs' failure to identify the specific constitutional or statutory sections at issue" violates the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. ECF No. 15 ("MTD") at 4 n.3. Rule 8 provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "short and plain statement of the claim" is required "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up). "To satisfy this standard, the complaint must at a minimum disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (citation and internal quotation marks).

Here, the Court finds that, because of Plaintiffs' pro se status, the Complaint satisfies Rule 8's requirements. *See DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 104 (2d Cir. 2010) (summary order) (finding that that the complaint "gave fair notice" to the defendant that the pro se plaintiff "was raising a claim, pursuant to Title VII," even though the plaintiff "did not explicitly state that he was filing a Title VII claim"); *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Plaintiffs identify a narrow set of facts alleging race discrimination by a private business. The universe of applicable racial discrimination claims is small, and indeed, Defendant identified and responded to seven discrimination claims that it

interpreted to be potentially at issue in the Complaint.[2] MTD at 5–16. Unlike the cases Defendant cites to, MTD at 4 n.3, here there is not a wide body of law that may be implicated, and there are no other enumerated claims. Because courts interpret pro se complaints to raise the strongest claims they *suggest*, the Court finds that the Complaint does not violate Rule 8. *See Triestman*, 470 F.3d at 474–75.

## III. To the Extent They Are Pled, Plaintiffs' Federal Claims Fail on the Merits

The Court first considers the merits of Plaintiffs' claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985, before turning to the merits of Plaintiffs' claims under Title II of the Civil Rights Act of 1964. Ultimately, each statute fails to provide a basis for relief.

### A. Plaintiffs Fail to State a Claim Under 42 U.S.C. §§ 1981, 1982, 1983, and 1985

The Court finds multiple independent defects with any claims under 42 U.S.C. §§ 1981, 1982, 1983, and 1985. First, the Court determines that Plaintiffs do not allege facts that can sustain an inference of intentional discrimination on the basis of race—a required element of each claim. Then, the Court identifies multiple additional deficiencies in each cause of action.

[2] The Court largely structures its analysis around the claims that Defendant identifies. These claims far exceed Plaintiffs' general invocation of "the Constitution," Compl. at 15, which would be stymied at the first step of any analysis because there is no state action alleged here. *See Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) ("Because the United States Constitution regulates only the Government, not private parties, a litigant . . . who alleges that her constitutional rights have been violated must first establish that the challenged conduct constitutes state action." (citation and internal quotation marks omitted)). The Court sees no additional claims that could apply to Plaintiffs' allegations and, in any event, Plaintiffs' opposition does not dispute that any relevant legal claim was omitted from discussion in the Motion to Dismiss. *See generally* Opp. The Court omits an analysis of common law emotional distress claims, because it sees no basis in the Complaint suggesting that Plaintiffs intended to allege them. Nonetheless, the Court agrees that such claims would be meritless for the reasons stated in Defendant's motion to dismiss. *See* MTD at 14–16.

### 1. Plaintiffs Fail to Plead Purposeful or Intentional Discrimination, Dooming Each Claim

Plaintiffs fail to state a claim for race discrimination under 42 U.S.C. §§ 1981, 1982, 1983, and 1985. "In order to prevail under these statutes, plaintiffs must establish purposeful or intentional discrimination." *De Jesus-Keolamphu v. Vill. of Pelham Manor*, 999 F. Supp. 556, 564 (S.D.N.Y.), *aff'd*, 166 F.3d 1199 (2d Cir. 1998) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268–69 (1993); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)); *see also Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 80 (2d Cir. 2021) (finding that Section 1982 only reaches "purposeful discrimination") (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389 (1982)). "Purposeful discrimination requires more than intent as volition or intent as awareness of consequences. It instead involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676) (cleaned up). That is, "to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Henry v. Cnty. of Nassau*, 6 F.4th 324, 335–36 (2d Cir. 2021) (citation omitted). A pure disparate impact theory of liability is thus not available to Plaintiffs, even though "[d]isproportionate impact is not irrelevant." *See Reynolds v. Barrett*, 685 F.3d 193, 201–02 (2d Cir. 2012); *Hayden v. Paterson*, 594 F.3d 150, 162–63 (2d Cir. 2010) (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)).

To support an inference of discriminatory intent, Plaintiffs rely heavily on statistical information and anecdotes to suggest that Black people and mixed-race families are treated differently than white people at their local Hannaford. *See* Compl. at 3–4. They allege that the

Dutchess County Hannaford is only staffed and patronized by white people—despite Black people comprising the "second largest ethnic group in Dutchess County." *Id*. And, they offer statistics that retailers in general are more likely to deny Black shoppers who seek a return without a receipt than white shoppers who do the same. Opp. at 2–3 (citation omitted). Plaintiffs also cite to studies finding still-prevalent disapproval of mixed-race marriages. *Id.* at 4–5. Last, Plaintiffs argue that a "pattern" of discrimination is evident from two other discriminatory incidents at Hannafords—a Puerto Rican man fired "because of his race, color, and national origin" at a Maine Hannaford in 2009 and an EEOC investigation into racial discrimination against a Black employee at a different Hannaford in New York state. *See id.* at 6.

These statistics, considered together, do not rise to the level of alleging racially discriminatory intent by Defendant. Statistics alone can occasionally provide a basis to infer discriminatory intent at the motion to dismiss stage, but the standard is demanding: The findings must be statistically significant and "of a level that makes other plausible non-discriminatory explanations very unlikely." *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015). That is because even "statistics showing entity-level discrimination shed little light on whether a particular individual defendant engaged in purposeful discrimination." *Reynolds*, 685 F.3d at 204. It is often the case that "it is impossible to assess from the[] percentages alone," even when set next to broader demographics, what meaning to assign statistics. *D.H. v. City of New York*, 309 F. Supp. 3d 52, 75 (S.D.N.Y. 2018).

Here, the cited statistics regarding grocery shoppers and mixed-race marriages are "generic categories" that are far too outdated and broad—i.e., lacking any connection to New York or Hannaford—to be probative. *See Raymond v. City of New York*, 317 F. Supp. 3d 746, 761 (S.D.N.Y. 2018). At most, the enumerated statistics suggest that many people and store workers,

in general, have built-in cognitive biases related to race. But they do not tend to rule out other non-race-based explanations for the actions of employees at the Dutchess County Hannaford toward Plaintiffs—let alone make those explanations "very unlikely." *Burgis*, 798 F.3d at 69. Because of the level of generality of these statistics, they also do not succeed to show "a discriminatory purpose and effect." *Henry*, 6 F.4th at 336.

Allegations about the treatment of two employees at other Hannaford stores—one occurring in a different state more than fifteen years ago—are similarly too distant in time, space, and context to support an inference of discrimination against customers at the Dutchess County Hannaford in 2024 and 2025. And, they cannot support a pattern-or-practice claim here. *See Reynolds*, 685 F.3d at 204–06 (finding that Title VII's pattern-or-practice framework does not apply to the Equal Protection context).

Plaintiffs also contend that their personal experiences show the discriminatory intent of Defendant's employees. First, Mr. Colliton never had an issue making returns without a receipt before he began patronizing Hannaford with his wife, Ms. Colliton, who is Black. Compl. at 5, 7–8. Meanwhile, Ms. Colliton routinely encountered issues whenever she tried to make a return without a receipt. *Id.* at 8. Second, when shopping with their mixed-race family, Plaintiffs were followed around the store, and a store manager indicated that he wished "you people" would not shop at Hannaford. *Id.* at 13–14. Third, Hannaford managers and supervisors "looked at [Plaintiffs]" with "hate and rage." Opp. at 4; *see also Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)) ("Because [the plaintiff] is proceeding pro se, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint.").

These allegations cannot salvage Plaintiffs' claims because Plaintiffs have not sufficiently "traced" the actions of Hannaford employees "to a purpose to discriminate on the basis of race." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 260 (1979). Plaintiffs allege facts showing that Hannaford employees spoke poorly about Plaintiffs and told them to shop elsewhere, but Plaintiffs fail to indicate any explicit reference to race or race proxies. Compl. at 13–14. "Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 (2d Cir. 2001).

Moreover, although "[a]n inference of discrimination arises when an individual of one race is treated less favorably than those of another race who are similarly situated," Plaintiffs do not actually allege that Hannaford employees treated Ms. Colliton worse than Mr. Colliton. *See Bishop v. Best Buy, Co. Inc.*, No. 8-CV-8427 (LBS), 2010 WL 4159566, at *5 (S.D.N.Y. Oct. 13, 2010), *aff'd sub nom. Bishop v. City of New York*, 518 F. App'x 55 (2d Cir. 2013) (cleaned up). Hannaford instructed *both* plaintiffs in July 2025 that they would only be permitted to make refunds with a valid receipt, owing to "the number of returns" they had made. Compl. at 10–11. Mr. Colliton, unlike Ms. Colliton, was specifically informed that "anyone acting on [his] behalf" was also forbidden from making a return without a receipt. *Id.* In fact, Hannaford sent that written directive to Mr. Colliton days before it sent one to Ms. Colliton. *Id.*

To the extent Plaintiffs seek to make an associational race discrimination claim based on their marriage, *see* Opp. at 5, their allegations still do not give rise to a plausible inference of discrimination. After Plaintiffs began shopping at Hannaford together, the Complaint alleges, employees routinely surveilled them. *See* Compl. at 13. However, the Complaint is silent as to whether either Mr. Colliton or Ms. Colliton experienced similar surveillance prior to being seen

together. *Cf. Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 38 (2d Cir. 2014) (noting heightened discipline only after it became known that the plaintiff was dating a Black woman). And, although the couple married in 2017, the Complaint explicitly asserts that "there was never any issue" with Mr. Colliton making returns without a receipt before 2024. *See* Compl. at 7. The confrontations with store employees and limitations on returns without a receipt similarly occurred in 2024 and 2025. *Id.* at 9–14. The seven intervening years suggest that these events are not traceable to Mr. Colliton's connection to Ms. Colliton. Plaintiffs also do not identify similarly situated customers—i.e., those making many returns without a receipt—to support their theory.

Last, "to nudge a claim across the line from conceivable to plausible, a plaintiff must plead facts that, if true, allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, and to rule out obvious alternative explanations for the defendant's conduct." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589–90 (2026) (cleaned up); *see also D.H. v. City of New York*, 309 F. Supp. 3d 52, 76 (S.D.N.Y. 2018) (applying the same principle to an inference of discrimination); *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) ("[A] complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination."). Here, there is an obvious alternative explanation: Hannaford employees "suspected Mr. Colliton of returning products for which he had not paid to improperly receive a refund or store credit, and therefore monitored him to prevent shoplifting." MTD at 7. Plaintiffs' allegations broadly support this account. Plaintiffs routinely utilized self-checkout and sought more than one hundred returns without a receipt. Compl. at 6–8. Hannaford employees monitored Plaintiffs' movements around the store and looked angrily at Plaintiffs. *Id.* at 13; Opp. at 4. Hannaford employees also spoke poorly about Plaintiffs and verbalized that they wanted Plaintiffs to shop

elsewhere. Compl. at 13–14. And, ultimately, the store imposed a requirement for Plaintiffs to show proof of purchase when making returns; Hannaford did not restrict Plaintiffs' shopping or their ability to make returns *with* proof of purchase. *See* Compl. at 10–11. For these reasons, the Complaint fails to plead discriminatory intent.

### 2. Plaintiffs' Claims Under Sections 1981, 1982, 1983, and 1985 Fail for Multiple Other Reasons

The pleading requirements for claims under Sections 1981, 1982, 1983, and 1985 elucidate additional deficiencies in Plaintiffs' allegations. To state a claim under either Section 1981 or Section 1982, the "plaintiffs must [allege]: (1) they are members of a racial minority; (2) an intent to discriminate on the basis of their race by [the] defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Silva v. Farrish*, 47 F.4th 78, 90 (2d Cir. 2022) (citation omitted).

Largely for the reasons stated in Defendant's brief, Plaintiffs do not allege an activity enumerated in the statute and thus fail the third element. *See* MTD at 10–11. Section 1981 requires that "[a]ll persons . . . have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]o satisfy the third element of a Section 1981 'make and enforce contracts' claim" in a retail context, "a plaintiff must present evidence that he was 'actually prevented from making a purchase.'" *Alexander v. Stop & Shop Supermkt. Co., LLC*, No. 22-CV-9557 (AEK), 2024 WL 4349016, at *4 (S.D.N.Y. Sept. 30, 2024) (citations omitted); *see also, e.g.*, *Anacacy v. Panera, LLC*, No. 19-CV-7126 (ENV), 2021 WL 2431010, at *4 (E.D.N.Y. June 9, 2021) (citing *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 854 (8th Cir. 2001) ("[A]fter a purchase is completed, no contractual duties are owed by either party."). Here, like in other retail cases where courts have found no indication that Plaintiffs were

"prevented from completing [their] purchase[s]," there is no discrimination in the making and enforcement of their contract. *Alexander*, 2024 WL 4349016, at *4. The contract discrimination arguably at issue here "occurred *after* Plaintiff[s] had completed [their] purchase of groceries," and, indeed, did not violate Hannaford's consistent policy that "manager approval may be required" for attempted returns without proof of purchase. *Id.*; Compl. at 7.

To state a claim under Section 1982—which secures "the same right" for "[a]ll citizens . . . as is enjoyed by white citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property"—a plaintiff "must allege interference with some right involving real or personal property." 42 U.S.C. § 1982; *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 395 (S.D.N.Y. 2006), *aff'd sub nom. Bishop v. Toys R Us*, 385 F. App'x 38 (2d Cir. 2010) (citing *City of Memphis v. Greene*, 451 U.S. 100, 121–22 (1981)). "In retail cases alleging violations of both the contracts clause of [S]ection 1981 and [S]ection 1982, the two claims are often considered together, and the conclusion that plaintiff has not pled that he was denied the right to enter into a contract counsels in favor of dismissal of the section 1982 claim." *Bishop*, 414 F. Supp. 2d at 395 (citation omitted). Here, as with the Section 1981 analysis, Plaintiffs do not allege that they were "prevented from making any purchases at the store." *Id.* Accordingly, Plaintiffs similarly fail to establish the third element under Section 1982.

Nor can Plaintiffs find any more success under an "equal benefit" Section 1981 framework. In addition to the "make and enforce contracts" provision, Section 1981 also provides that "[a]ll persons . . . have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Such "equal benefit" claims require a plaintiff to (1) allege "racial animus," (2) "identify a relevant law or proceeding for the 'security of persons and property,'" and (3) allege

that the "defendants have deprived them of 'the full and equal benefit' of this law or proceeding." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003) (quoting 42 U.S.C. § 1981(a)). Plaintiffs do not satisfy any of these elements, because they do not allege facts from which the Court can infer discriminatory intent, and they do not identify a relevant law or proceeding that is implicated. *See supra* Section III.A.1; Compl. at 15 (noting only that the alleged events "infringe on Plaintiffs' rights under the Constitution and unlawfully discriminate against Plaintiffs"). Because "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law," Plaintiffs also do not state an "equal benefit" claim under Section 1981. *See Triestman*, 470 F.3d at 477 (citation and internal quotation marks omitted).

As to claims under Sections 1983 and 1985, Plaintiffs similarly fail to meet other basic elements beyond discriminatory intent. Section 1983 creates liability for any person acting "under color . . . of any State" who deprives "any citizen of the United States or other person within the jurisdiction thereof . . . of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In other words, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Similarly, "a claim under [Section] 1985(3) for conspiracy to deny equal protection in violation of the Fourteenth Amendment is not actionable in the absence of state action." *Edmond v. Hartford Ins. Co.*, 27 F. App'x 51, 53 (2d Cir. 2001) (citation omitted). Plaintiffs do not allege facts—conclusory or otherwise—to suggest that Hannaford's actions may be "fairly attributable to the state" under any of the traditional tests. *See Grogan*, 768 F.3d at 264. Accordingly, Plaintiffs cannot state a claim under Section 1983 or Section 1985.

**B. Plaintiffs Fail to State a Claim Under Title II**

Title II of the Civil Rights Act of 1964 entitles all persons "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race." 42 U.S.C. § 2000a(a). "A plaintiff bringing a claim under Title II must allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public accommodation and (2) discriminatory intent." *Renxiong Huang v. Minghui.org*, No. 17-CV-5582 (ER), 2018 WL 3579103, at *3 (S.D.N.Y. July 25, 2018) (citing *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009)). For the reasons described above, Plaintiffs plainly fail to allege discriminatory intent. *See supra* Section III.A.1.

Plaintiffs also do not plead that the alleged discrimination impacted their access to a covered "place of public accommodation." 42 U.S.C. § 2000a(a). A place of public accommodation must fall into one of the following categories:

> (1) a lodging for transient guests located within a building with more than five rooms for rent; (2) a facility principally engaged in selling food for consumption on the premises, including such facilities located within retail establishments and gasoline stations; (3) any place of exhibition or entertainment; (4) any establishment located within an establishment falling into one of the first three categories, and which holds itself out as serving patrons of that establishment; or (5) any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment.

*Bishop v. Henry Modell & Co.*, No. 8-CV-7541 (NRB), 2009 WL 3762119, at *12 (S.D.N.Y. Nov. 10, 2009), *aff'd* 422 F. App'x 3 (2d Cir. 2011) (citing 42 U.S.C. § 2000a(b)). "Because Congress specified the establishments which constitute places of public accommodation under [Section] 2000a, courts in this circuit apply the statute to only those covered establishments." *Renxiong Huang*, 2018 WL 3579103, at *3. Indeed, courts have "consistently held" that typical

grocery stores do not constitute places of public accommodation under the statute. *Escoffier v. Whole Foods Mkt. Grp., Inc.*, No. 22-CV-6588 (AS), 2024 WL 3012480, at *5 (S.D.N.Y. June 13, 2024), *appeal dismissed*, No. 24-1790, 2025 WL 3903860 (2d Cir. Sept. 24, 2025) (citations omitted); *see also McArthur v. C-Town Super Mkt.*, No. 21-CV-972 (SRU), 2022 WL 2981573, at *3 (D. Conn. July 28, 2022) (collecting cases). Because Plaintiffs do not plead any facts to suggest that Hannaford "principally . . . sell[s] food for consumption on the premises," their claim fails as to that element. *Bishop*, 2009 WL 3762119, at *12. Accordingly, Plaintiffs meet neither element required to state a claim under Title II.

## IV. To the Extent They Are Pled, Plaintiffs' State Law Claims Also Fail on the Merits[3]

Because the Court construes the Complaint to allege a claim under Title II, the Court also considers its analogue under the New York State Human Rights Law ("NYSHRL") and finds that the Complaint fails to state a basis for relief. *See Marks-Ellis v. NYU Langone Health Sys.*, No. 23-CV-9618 (KPF), 2025 WL 1784814, at *9 n.6 (S.D.N.Y. June 27, 2025) (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017)) (construing a pro se complaint to include state law analogues). Like Title II, the NYSHRL does not permit "any place of public accommodation . . . because of . . . race, . . . directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a). However, unlike federal law, "the statutory list" enumerating places of public accommodations in the New York law is "illustrative, not specific." *Cahill v. Rosa*, 89 N.Y.2d 14, 21 (1996). And, in any event, the list includes "wholesale and retail stores and establishments dealing with goods or services of any kind." N.Y. Exec. Law § 292(9).

---

[3] Because the parties appear to be of diverse citizenship and Plaintiffs seek $10 million in damages, the Court considers the merits of these claims even after dismissal of Plaintiffs' federal claims. *See* Compl. at 2, 17; ECF No. 10.

Accordingly, it is appropriate to consider a grocery store as a covered place of public accommodation under state law.

Nonetheless, Plaintiffs still fail to plead that they were discriminated against "because of . . . race." N.Y. Exec. Law § 296(2)(a). "At the pleading stage," the NYSHRL requires a plaintiff "to plausibly allege facts giving rise to an inference of discrimination based on the plaintiff's protected characteristics." *Shih v. Broadway League*, No. 23-CV-8035 (JPC) (RWL), 2025 WL 567987, at *3 (S.D.N.Y. Jan. 28, 2025), *report and recommendation adopted*, 2025 WL 1890608 (S.D.N.Y. July 8, 2025) (citing *Jones v. Beth Israel Hosp.*, No. 17-CV-3445 (GHW), 2018 WL 1779344, at *12 (S.D.N.Y. Apr. 12, 2018)). The intent standard is lower than for a federal claim, and courts have interpreted it to require only "differential treatment of any degree based on a discriminatory motive." *See, e.g.*, *Marks-Ellis*, 2025 WL 1784814, at *10–11 (collecting cases).

For the same reasons that the Court discussed in Section III.A.1, there is a complete dearth of non-conclusory allegations to support the inference of a discriminatory motive. The Complaint successfully alleges that Plaintiffs were treated differently than the average Dutchess County Hannaford customer. However, that Mr. Colliton is white and Ms. Colliton is Black, and both received similar treatment, supports the inference that Ms. Colliton's treatment was not motivated by her race—particularly because Plaintiffs do not allege differential treatment from white customers with similar return practices. That Mr. Colliton alleges no change in treatment by Hannaford employees for seven years following his marriage similarly makes the Court unable to infer that his treatment was attributable to a discriminatory motive related to his association with Ms. Colliton. Accordingly, the Court finds that Plaintiffs do not state a claim under the NYSHRL.

To the extent Plaintiffs plead a claim under Article I, Section 11 of the New York State Constitution, that claim also fails. The provision guarantees "the equal protection of the laws of this state" and prohibits discrimination in the exercise of civil rights "because of race." N.Y. Const. art. I, § 11. "[T]he state constitutional tort action is analyzed under the same standard as [a] [S]ection 1983 suit." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 754 (2d Cir. 2003) (citing *Brown v. State*, 89 N.Y.2d 172, 190 (1996)). Thus, because Plaintiffs "rel[y] on identical facts to support both claims, the state equal protection action suffers the same fate as the [S]ection 1983 claim." *Id.* at 755; *see also supra* Section III.A.

## V. Plaintiffs May File an Amended Complaint

Due to Plaintiffs' pro se status, the Court affords them an opportunity to amend the Complaint with respect to only the NYSHRL claim and any other applicable claims not analyzed herein. Because the federal claims discussed here fail for multiple reasons, the Court denies leave to amend those claims. The Amended Complaint must specifically state which claims the Collitons assert, as those are the only ones the Court will consider, and it must be consistent with this Opinion and Order. In other words, the Amended Complaint must remedy the deficiency identified in the NYSHRL claim and allege non-conclusory facts to support an inference of discriminatory intent.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss in full. If Plaintiffs choose to file it, the Amended Complaint must be filed by **October 30, 2026**. If no Amended Complaint is filed by that date, the Court will dismiss this action with prejudice. The Clerk of Court is directed to mail a copy of this Opinion to Plaintiffs and terminate ECF No. 14.

Dated: September 24, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge